Patricia L. STEPHEN, Plaintiff-Appellee,

v.

CITY AND COUNTY OF DENVER, a municipal corporation, Defendant-Appellant.

No. 80CA0714.

Colorado Court of Appeals, Div. I.

Oct. 22, 1981.

Rehearing Denied Nov. 27, 1981.

Certiorari Granted March 8, 1982.

English & Thurman, P. C., Daniel Lee English, Denver, for plaintiff-appellee.

Max P. Zall, City Atty., Lloyd K. Shinsato, Carl R. Mangino, Asst. City Attys., Denver, for defendant-appellant.

STERNBERG, Judge.

The plaintiff, Patricia L. Stephen, was involved in an automobile accident with another motor vehicle at an intersection in Denver. A sign requiring Stephen's car to stop before entering the intersection had been installed adjacent to the street, but at the time of the collision had been turned around by some unknown third person so as not to be visible to Stephen. She sued the City and County of Denver and, following a trial to the court, was awarded damages. Denver appeals, and we reverse.

Following the prospective overruling of the doctrine of sovereign immunity by the Colorado Supreme Court, *Evans v. Board of County Commissioners of El Paso*, 174 Colo. 97, 482 P.2d 968 (1971); *Flournoy v. School District No. 1*, 174 Colo. 110, 482 P.2d 966 (1971); *Proffitt v. State*, 174 Colo. 113, 482 P.2d 965 (1971), and in accordance with the holding in those cases that the General Assembly could restore the doctrine in whole or in part, the Colorado Governmental Immunity Act, § 24–10–101 et seq., C.R.S.1973, was adopted.

As relevant to this case, § 24–10–106(1) provides as follows:

"A public entity shall be immune from liability in all claims for injury which are actionable in tort except as provided otherwise in this section. Sovereign immunity, whether previously available as a defense or not, shall not be asserted by a public entity as a defense in an action for damages for injuries resulting from:

. . . .

(d) A dangerous condition which interferes with the movement of traffic on the traveled portion and shoulders or curbs of any public highway, road, street, or sidewalk within the corporate limits of any municipality . . . ."

Stephen argues, and the trial court based its judgment on, the interpretation that a traffic control device such as a stop sign comes within the statutory waiver of sovereign immunity. In other words, the trial court held that, by its failure properly to maintain a traffic control device, Denver was liable for damages for injuries resulting from "a dangerous condition which interferes with the movement of traffic on the traveled portion . . . of a street."

A compelling argument can be made for the proposition that failing properly to maintain a stop sign creates a dangerous condition which interferes with the movement of traffic. Nevertheless, however logical that argument may be, we are not at liberty to supply a judicial definition of the term "dangerous condition" because the General Assembly has already done so in the definition section of the act in question. Section 24–10–103(1), C.R.S.1973 states in pertinent part:

" 'Dangerous condition' means the *physical condition of any* public building, public hospital, jail, public highway, road, or *street*, public facility located in any park or recreation area . . . ." (emphasis supplied)

Thus, we must apply this definition of the term "dangerous condition" to determine the meaning of that term as it is used in § 24–10–106(1)(d) of the act. We recognize that, absent this strict definition provided by the General Assembly in the Colorado Governmental Immunity Act, existing case law would have mandated a different result. *See, e.g., Lewis v. Lorenz*, 144 Colo. 23, 354 P.2d 1008 (1960); *Thorpe v. Denver*, 30 Colo.App. 284, 494 P.2d 129 (1971). However, where, as here, the meaning of a clause in the statute is plain and unambiguous and involves no absurdity, judicial construction is unwarranted. *Lassner v. Civil Service Commission*, 177 Colo. 257, 493 P.2d

1087 (1972); *Colorado State Civil Service Employees Ass'n v. Love*, 167 Colo. 436, 448 P.2d 624 (1968). *See also Tompkins v. De-Leon*, Colo., 595 P.2d 242 (1979).

■ Applying this definition of "dangerous condition" in § 24–10–103 to that term in § 24–10–106(1)(d) requires the conclusion that improper maintenance of a stop sign, albeit that the sign is immediately adjacent to a city street and controls traffic on that street, is not one of the items for which waiver of immunity is specified by the Colorado Governmental Immunity Act. This conclusion is inevitable because the condition of an adjacent stop sign is not a part of the physical condition of the street.

While absent the strict definition supplied in this statute persuasive argument can be made that the physical condition of a street should include the placement of a stop sign adjacent thereto and controlling traffic thereon, nevertheless, such an argument is more properly addressed to the General Assembly than to the courts. *See Tompkins v. DeLeon, supra* (Rovira, J., specially concurring).

The judgment is reversed and the cause is remanded with directions to enter judgment for the city.

KIRSHBAUM, J., concurs.

COYTE, J., dissents.

COYTE, Judge, dissenting.

I dissent.

The majority's construction of the statute in question is contrary to the presumption that the General Assembly intended it to have a "just and reasonable result." Section 2–4–201, C.R.S.1973. By erecting a wall of sovereign immunity precisely along the boundary of a public street, the majority had reduced the issue of defendant's liability from a question of fault to a question of feet. With this result, I cannot agree.

The majority premises its holding on a strict interpretation of the definition of "dangerous condition" set out in § 24–10–103, C.R.S.1973. Under that interpretation only the "physical condition" of the street itself may be a "dangerous condition" for which sovereign immunity is waived.

However, by the language of the statute itself a broader interpretation of the term "dangerous condition" may be followed. Section 24–10–103, C.R.S.1973, states:

"As used in this article, *unless the context otherwise requires*: (1) 'Dangerous condition' means the physical condition of any public ... street ...." (emphasis added).

And, in § 24–10–106(1)(d) waiver of sovereign immunity is specified for "[a] condition which interferes with the movement of traffic on the traveled portion and shoulders or curbs of any public ... street ...."

To me, this latter definition of dangerous condition is one in which the context requires a broader interpretation of the waiver of sovereign immunity than that followed by the majority. And, I would rule that the improper placement of the stop sign here is within the type of dangerous condition contemplated by § 24–10–106(1)(d).

The trial court found that:

"(5) Prior to the accident, the 'stop' sign had been turned such that it appeared to make Oneida Street the stop street and to make 36th Avenue the through street.

"(6) Plaintiff reasonably would be expected to observe the 'stop' sign had it been visible to her and to assume the 'stop' sign was properly placed, stopping traffic on Oneida Street.

"(7) The Defendant had both constructive and actual notice that the 'stop' sign had been turned, but failed to correct the situation. Specifically, the 'stop' sign had been turned for such time that the Defendant, in the exercise of reasonable care, should have noticed and corrected the situation and, in fact, the situation had been brought to the actual notice of the Defendant by phone calls and complaints placed to the Defendant by a citizen, Mr. Bunting, such that in the exercise of reasonable care, the Defendant should have remedied the situation.

"(8) The Defendant had a duty to correct the situation and was negligent in failing to do so within a reasonable time after learning of it.

"(9) The damages suffered by Plaintiff as a proximate result of Defendant's negligence were: . . . ."

*Thorpe v. Denver,* 30 Colo.App. 284, 494 P.2d 129 (1971), is a case which preceded the present immunity statute. There the city attempted to argue, as the majority states in its opinion, that it can only be liable for physical defects or obstructions in streets and that a malfunctioning traffic light (traffic sign) fits into neither category. The court stated:

"We find no compelling reason to limit the City's liability to defects or obstructions on the surface of the roadway. The failure of the City to maintain a traffic light properly can create a condition far more dangerous than, for example, a hole in the pavement. Accordingly, we hold that the City's duty to maintain its streets includes a duty to maintain its traffic lights in a reasonably safe condition for travel."

The same language may be appropriately applied to the stop sign in this case. Thus, I would affirm the judgment of the trial court.