
Patricia L. STEPHEN, Petitioner,

v.

CITY AND COUNTY OF DENVER, Respondent.

No. 81SC402.

Supreme Court of Colorado,
En Banc.

Feb. 22, 1983.

Rehearing Denied March 14, 1983.

English & Thurman, P.C., Daniel Lee English, Denver, for petitioner.

Max P. Zall, City Atty., Lloyd K. Shinsato, Asst. City Atty., Denver, for respondent.

Colorado Trial Lawyers Ass'n, Mary M. Josefiak, Boulder, for amicus curiae.

LOHR, Justice.

The petitioner, Patricia L. Stephen, brought suit against the City and County of Denver for personal injuries and property damage sustained in an automobile accident that she alleged was proximately caused by the defendant's negligence in failing properly to maintain a stop sign. The Denver District Court entered judgment for the plaintiff after trial to the court, and the defendant appealed. The Colorado Court of Appeals reversed the judgment, holding that Denver was immune from liability pursuant to section 24–10–106(1), C.R.S.1973 (1982 Repl.Vol. 10) of the Colorado Governmental Immunity Act. *Stephen v. City and County of Denver*, 641 P.2d 295 (Colo.App. 1981). We granted certiorari and now reverse the judgment of the court of appeals and direct that the judgment of the district court be reinstated.

Just prior to the accident, Stephen was driving her automobile east on 36th Avenue approaching Oneida Street. She entered the intersection without stopping, and her automobile collided with another vehicle traveling north on Oneida Street. A stop sign had been placed at the intersection by the City and County of Denver so that vehicles traveling east on 36th Avenue were required to stop before entering the intersection while vehicles on Oneida Street were allowed to continue through the intersection without stopping. However, several days prior to the accident, unknown third parties had turned the sign so that it faced northbound traffic on Oneida Street and appeared to make 36th Avenue a "through" street.

In her complaint against Denver, Stephen alleged that the defendant had a duty to

maintain the intersection and the stop sign in a safe condition, and that it had actual notice, based on citizen complaints, of the incorrect position of the sign several days before the accident but negligently failed to correct the problem in breach of its duty. After trial, the district court made written findings of fact, generally in favor of Stephen. The court found that the defendant had both constructive and actual notice that the sign had been turned, and that it failed to correct the situation within a reasonable time after receiving such notice. The court awarded Stephen both out-of-pocket expenses and general damages.[1]

The Colorado Court of Appeals reversed the trial court's judgment, holding that governmental immunity barred recovery against Denver for its negligence because the Colorado Governmental Immunity Act[2] did not "waive" the city's right to assert immunity in a negligence suit where the alleged breach of duty stems from an improperly maintained stop sign. Judge Coyte dissented, stating that the Act should be read to include improper placement of a stop sign within the statutory definition of a "dangerous condition" for which the city may be held liable and that the general assembly intended this just and reasonable result. We agree with the reasoning of the dissenting judge.

The Colorado Governmental Immunity Act creates the following relevant exception to immunity for tort claims:

(1) A public entity shall be immune from liability in all claims for injury which are actionable in tort except as provided otherwise in this section. Sovereign immunity, whether previously available as a defense or not, shall not be asserted by a public entity as a defense in an action for damages for injuries resulting from:

    \*     \*     \*     \*     \*     \*

(d) A dangerous condition which interferes with the movement of traffic on the traveled portion and shoulders or curbs of any public highway, road, street, or sidewalk within the corporate limits of any municipality . . .

Section 24–10–106(1)(d), C.R.S.1973 (1982 Repl.Vol. 10). "Dangerous condition" is defined in section 24–10–103(1) as follows:

As used in this article, unless the context otherwise requires:

(1) "Dangerous condition" means the physical condition of any public building, public hospital, jail, public highway, road, or street, public facility located in any park or recreation area maintained by a public entity, or public water, gas, sanitation, electrical, power, or swimming facility where the physical condition of such facilities or the use thereof constitutes a risk to the health or safety of the public, which is known to exist or which in the exercise of reasonable care should have been known to exist and which condition is proximately caused by the negligent act or omission of the public entity in constructing or maintaining such facility. . . .

■ A possible reading of these statutes, and the one adopted by the majority opinion of the court of appeals, is that the exception to governmental immunity extends only to negligence in maintaining the physical condition of roads or streets and that stop signs do not constitute a part of the physical condition of roads or streets. While this interpretation finds some support in the statutory language, we believe that it does not comport with the legislative purpose, and is at odds with the presumption that in enacting the statute a just and reasonable result was intended. *See* section 2–4–201(1)(c), C.R.S.1973 (1980 Repl.Vol. 1B).

■ It is fundamental that in construing a statute we must seek to ascertain and

---

1. Stephen requested that the court also award amounts for property damages and lost wages in a post-trial motion to alter or amend the judgment or, in the alternative, for a new trial on the issue of damages. Stephen did not appeal the district court's denial of the motion.

2. Sections 24–10–101 through –118, C.R.S.1973 (1982 Repl.Vol. 10).

give effect to the intention of the legislature. *E.g., U.M. and S.M. v. District Court of Larimer County,* 631 P.2d 165 (Colo. 1981). The apparent purpose of the general assembly in not extending sovereign immunity to actions for injuries resulting from dangerous conditions of roads or streets was to make governments liable for failure to maintain those facilities in a condition safe for public use.[3] Thus, the dangerous conditions for which a government is to be liable are those "which [interfere] with the movement of traffic," section 24–10–106(1)(d), and "dangerous condition" is defined to extend to those physical conditions of roads or highways that affect their use in a way that "constitutes a risk to the health or safety of the public." Section 24–10–103(1). This legislative emphasis on maintenance of roads and highways in a condition that promotes the safe movement of traffic reflects concern that those facilities function in a way consistent with that purpose. The necessity of stop signs to regulate traffic flow in the interest of public safety needs no elaboration. Viewing a road and street system functionally, it is apparent that stop signs are integral parts of roads and highways. We believe that to construe "dangerous condition" to be limited to the physical condition of the road surface gives too cramped a reading to the statute and ignores the purpose for which this exception to sovereign immunity was created.

The construction of the governmental immunity statute that we adopt today is consistent with decisions of other courts that have construed similar statutory language. *See Steurer v. Yuhasz,* 29 Conn.Supp. 352, 287 A.2d 643 (1972) (failure to maintain a stop sign created a "defective road"). *Brown v. State Highway Commission,* 202 Kan. 1, 444 P.2d 882 (1968) (defectively installed or obstructed stop sign controlling entrance onto state highway is a "defect in

a state highway"); *O'Hare v. City of Detroit,* 362 Mich. 19, 106 N.W.2d 538 (1960) (failure to replace a knocked-down stop sign is included in statute imposing liability on city for "neglect to keep . . . streets . . . in reasonable repair"); *Fox v. City of Columbia,* 260 S.C. 367, 196 S.E.2d 105 (1973) (malfunctioning traffic signal is a "defect in any street").

An example will further illustrate why we believe that the statutory construction disallowing a defense of governmental immunity in cases involving improperly maintained street signs is the more reasonable one. Adoption of the opposite reading could lead to the inequitable result of permitting negligence actions against a municipality for improperly maintained traffic directions painted or placed on the streets while disallowing such actions for improperly maintained signs located in close proximity to the traveled portion of the roadways. Surely the legislature intended no such anomalous consequence. *See* section 2–4–203(1)(e), C.R.S.1973 (1980 Repl.Vol. 1B).

Prior to enactment of the Colorado Governmental Immunity Act, the court of appeals recognized the reasonableness of considering traffic signs as integral parts of a street system in interpreting the court-made rule imposing liability on municipalities for accidents caused by a "defect or dangerous condition" in the streets to include a malfunctioning traffic light. *Thorpe v. Denver,* 30 Colo.App. 284, 494 P.2d 129 (1972) (applying rule of *Aurora v. Woolman,* 165 Colo. 377, 439 P.2d 364 (1968)). In *Thorpe v. Denver,* the court stated:

We find no compelling reason to limit the City's liability to defects or obstructions on the surface of the roadway. The failure of the City to maintain a traffic light properly can create a condition far more

---

**3.** The Colorado Governmental Immunity Act was a response to three Colorado Supreme Court decisions that prospectively overruled prior decisions recognizing a defense of governmental immunity in tort actions. *See Evans v. Board of County Commissioners,* 174 Colo. 97, 482 P.2d 968 (1971); *Flournoy v. School District,* 174 Colo. 110, 482 P.2d 966 (1971); *Prof-*

*fitt v. State,* 174 Colo. 113, 482 P.2d 965 (1971). These decisions held that the legislature had authority to restore the doctrine in whole or in part. Thus, the Colorado Governmental Immunity Act is in derogation of the common law, and the legislative grants of immunity must be strictly construed. *E.g., Pigford v. People,* 197 Colo. 358, 593 P.2d 354 (1979).

dangerous than, for example, a hole in the pavement.

30 Colo.App. at 286, 494 P.2d at 130. We find that reasoning equally apposite to the statutory construction question that we resolve today.

We reverse the judgment of the court of appeals and direct that the judgment of the district court be reinstated.