James R. BLOOMER and Cecilia T. Bloomer, Plaintiffs–Appellants,

v.

BOARD OF COUNTY COMMISSIONERS OF BOULDER COUNTY, Defendant–Appellee.

No. 89SC267.

Supreme Court of Colorado, En Banc.

Oct. 9, 1990.

Holland & Hart, Timothy M. Rastello, R. Kirk Mueller, Thomas K. Higley, Denver, for plaintiffs-appellants.

H. Lawrence Hoyt, Boulder County Atty., Madeline J. Mason, Asst. County Atty., Boulder, for defendant-appellee.

Marion A. Brewer, Denver, Thomas Fenton Smith, Aspen, for amicus curiae Colorado Counties, Inc.

Chief Justice ROVIRA delivered the Opinion of the Court.

In this personal injury action, the plaintiffs James R. Bloomer and Cecilia T. Bloomer petitioned for certiorari review [1] of the trial court's ruling granting summary judgment to one of the defendants, Board of County Commissioners of Boulder County ("Board"). The court ruled that section 24–10–106, 10A C.R.S. (1988), did not waive sovereign immunity for Boulder County, a political subdivision of the State of Colorado. We granted certiorari to consider the Bloomers' statutory-construction and constitutional objections to the trial court's decision.

---

**1.** The Bloomers initially appealed to the court of appeals. Subsequently, they filed with this court a petition for writ of certiorari pursuant to C.A.R. 50, and this case was transferred pursuant to § 13–4–110, 6A C.R.S. (1987).

## I

In October 1986, a pickup truck struck and severely injured James Bloomer while he was riding a bicycle through a Boulder County road intersection. In their final amended complaint, the Bloomers named numerous defendants, including the Board, alleging that the defendants failed to properly design, construct, or maintain the intersection.

The Board moved to dismiss the complaint on the ground that the Board was immune from suit under the Colorado Governmental Immunity Act (Immunity Act), §§ 24–10–102 to –120, 10A C.R.S. (1988). After the parties submitted affidavits, exhibits, and memorandum briefs, the trial court ruled that it would consider the motion as a motion for summary judgment, and then granted summary judgment in favor of the Board.

## II

Section 24–10–106, 10A C.R.S. (1988), provides in relevant part:

> (1) A public entity shall be immune from liability in all claims for injury which lie in tort.... Sovereign immunity is waived by a public entity in an action for injuries resulting from:
>
> . . . .
>
> (d) A dangerous condition of a public highway, road, or street which physically interferes with the movement of traffic on the paved portion customarily used for travel by motor vehicles, if paved, or on the portion customarily used for travel by motor vehicles, if unpaved, of any public highway, road, street, or sidewalk within the corporate limits of any municipality, or of any highway which is a part of the federal interstate highway system or the federal primary highway system, or of any highway which is a part of the federal secondary highway system, or of any highway which is a part of the state highway system on that portion of such highway, road, street, or sidewalk which

was designed and intended for public travel or parking thereon....

A "public entity" is defined as "the state, county, city and county, incorporated city or town, school district, special improvement district, and every other kind of district, agency, instrumentality, or political subdivision of the state organized pursuant to law." § 24–10–103(5).

The principles of statutory construction are well established. Interpretation of statutes is a question of law, and appellate courts need not defer to the trial court's interpretation. *E.g., People v. Terry,* 791 P.2d 374, 376 (Colo.1990); *Colorado Div. of Employment & Training v. Parkview Episcopal Hosp.,* 725 P.2d 787, 790 (Colo.1986). " 'Legislative intent is the polestar of statutory construction,' " *Adams County School Dist. No. 50 v. Dickey,* 791 P.2d 688, 691 (Colo.1990) (quoting *Schubert v. People,* 698 P.2d 788, 793 (Colo.1985)), and the goal of a court in construing a statute is to ascertain and give effect to the intent of the General Assembly, *Stephen v. City & County of Denver,* 659 P.2d 666, 667–68 (Colo.1983). To determine the legislative intent, courts look first to the statutory language. *Id.* If the language of a statute is clear and unambiguous there is no need to resort to interpretive rules of statutory construction. *Griffin v. S.W. Devanney & Co.,* 775 P.2d 555, 559 (Colo.1989).

The Bloomers initially make two arguments in support of their assertion that the trial court's construction of subsection 24–10–106(1)(d), 10A C.R.S. (1988), is erroneous: first, that the plain language of the subsection—providing that "sovereign immunity is waived by a public entity" and that "public entity" includes counties—waives the Board's sovereign immunity;[2] and, second, that the legislature intended, as demonstrated by the legislative history of subsection 24–10–106(1)(d), to waive the sovereign immunity of counties for dangerous conditions present on county roads.

**2.** The Bloomers do not dispute that the Board is entitled to assert the doctrine of sovereign immunity except where its immunity is waived.

We conclude that the trial court correctly construed subsection 24–10–106(1)(d).

■ The text of subsection 24–10–106(1)(d) is not "reasonably susceptible to more than one interpretation," *Terry*, 791 P.2d at 376, on the question of whether subsection 24–10–106(1)(d) waives sovereign immunity for counties in their construction and maintenance of county roads, and it is unnecessary to consider the statute's legislative history.[3] Subsection 24–10–106(1)(d) states that sovereign immunity is waived by a "public entity" in an action for injuries resulting from a "dangerous condition of a public highway, road, or street." While this language appears to include counties—because "public entity" is defined under the Immunity Act as including counties, *see* § 24–10–103(5)—the subsequent language in subsection 24–10–106(1)(d) makes no provision for waiving the sovereign immunity of counties for dangerous conditions present on county roads.

Subsection 24–10–106(1)(d) waives a public entity's sovereign immunity with regard to only four types of roads: where a "dangerous condition ... which physically interferes with the movement of traffic" relates to (1) "any public highway, road, street, or sidewalk within the corporate limits of any municipality"; (2) "any highway which is a part of the federal interstate highway system or the federal primary highway system"; (3) "any highway which is a part of the federal secondary highway system"; or (4) "any highway which is a part of the state highway system on that portion of such highway, road, street, or sidewalk which was designed and intended for public travel or parking thereon." We must presume that the legislature was aware of the existence of county roads, since it enacted legislation in 1953 requiring the establishment in each county of "a primary system and a secondary system of county roads," 1953 Colo.Sess.Laws 514; § 43–2–108, 17 C.R.S. (1984). *See Smith v. Miller*, 153 Colo. 35, 39, 384 P.2d 738, 740 (1963). Accordingly, the legislature's decision to exclude county roads must be recognized in our interpretation of subsection 24–10–106(1)(d).

The Bloomers rely on opinions issued from two different panels of the court of appeals that have construed subsection 24–10–106(1)(d) as waiving sovereign immunity for counties in an action for injuries resulting from dangerous conditions on county roads.[4] *See Wausau Ins. Cos. v. Kit Carson County*, No. 88CA1622 (Colo.App. Nov. 30, 1989) (unpublished opinion), *cert. held in abeyance* (1990); *Madill v. County of Adams*, 799 P.2d 949 (Colo.App.1989), *cert. held in abeyance* (1990); *see also Meserole v. City of Aspen*, 786 P.2d 456 (Colo.App.1989), *cert. granted* (1990). Although *Meserole* did not specifically concern the issue addressed in *Wausau Insurance* and *Madill*—whether subsection 24–10–106(1)(d) waived sovereign immunity for counties—both *Madill* and *Wausau Insurance* relied on *Meserole*'s construction of subsection 24–10–106(1)(d).

In *Meserole* the court of appeals construed subsection 24–10–106(1)(d) as creating *five* different categories of roads, comprising the four categories we identified previously, *see* Part II, *supra*, at 945, and an additional category: "public highways, roads, or streets which are not within the boundaries of a municipality and which are not part of the federal or state highway system." The court of appeals obtained the fifth category by construing each of the numerous "of's" in subsection 24–10–106(1)(d) as creating a new category:

Under § 24–10–106(1)(d), the defense of sovereign immunity is unavailable for injuries resulting from:

---

3. We previously have determined that the legislature's purpose in enacting § 24–10–106 was "to make governments liable for failure to maintain those facilities in a condition safe for public use." *Stephen*, 659 P.2d at 668.

4. The United States Court of Appeals for the Tenth Circuit is the only other appellate court that has construed § 24–10–106(1)(d). In *American Employers Ins. Co. v. Board of County Comm'rs*, 547 F.2d 511 (10th Cir.1976), the court, without explanation, construed § 24–10–106(1)(d) as not waiving the sovereign immunity of counties.

"A dangerous condition *of* a public highway, road, or street which physically interferes with the movement of traffic ..., *of* any public highway, road, street, or sidewalk within the corporate limits of any municipality, or *of* any highway which is a part of the federal interstate highway system ..., [or *of* any highway which is a part of the federal secondary highway system] [5], or *of* any highway which is a part of the state highway system on that portion of such highway, road, street, or sidewalk which was designed and intended for public travel or parking thereon...."

786 P.2d at 457 (emphasis supplied by the court of appeals; brackets and emphasis in brackets added).

In *Madill* and *Wausau Insurance*, the court of appeals reasoned that the legislature, by adding in 1986 the clause in subsection 24–10–106(1)(d) following the first "of," [6] intended to create a fifth category of roads for which sovereign immunity for dangerous conditions on those roads was waived. We do not agree with the court of appeals construction of the statute.

**5.** The court of appeals omitted the bracketed text from its quotation of § 24–10–106(1)(d).

**6.** Prior to 1986, § 24–10–106(1)(d) provided in part:

(1) .... Sovereign immunity is waived by a public entity in an action for injuries resulting from:

(d) A dangerous condition which interferes with the movement of traffic on the traveled portion and shoulders or curbs, of any public highway, road, street, or sidewalk within the corporate limits of any municipality....

*See* § 24–10–106(1)(d), 10 C.R.S. (1982). In 1986, the legislature added the following underlined text to § 24–10–106(1)(d):

(1) .... Sovereign immunity is waived by a public entity in an action for injuries resulting from:

(d) A dangerous condition *of a public highway, road, or street* which *physically* interferes with the movement of traffic *on the paved portion, if paved, or on the portion customarily used for travel by motor vehicles, if unpaved,* of any public highway, road, street, or sidewalk within the corporate limits of any municipality....

*See* 1986 Colo.Sess.Laws 875–76.

**7.** Even were we to consider the legislative history underlying the Immunity Act generally, and

The legislature's use of the disjunctive "or" demarcates different categories. *See, e.g., World of Sleep v. Davis,* 188 Colo. 443, 446, 536 P.2d 34, 35 (1975); *Sprague v. Caldwell Transp.,* 116 Idaho 720, 721, 779 P.2d 395, 396 n. 1 (1989). Accordingly, notwithstanding the legislature's 1986 amendment to subsection 24–10–106(1)(d), the statute continues to provide for only four categories of roads for which sovereign immunity for dangerous conditions on the roads is waived, and the disjunctive "or" distinctly marks the categories. The clause following the first "of" merely modifies "dangerous condition," and only the second and subsequent "of's" emphasized by the court of appeals create categories of roads for which sovereign immunity is waived.

Moreover, because subsection 24–10–106(1)(d) is in derogation of the common law regarding sovereignty, *see, e.g., In re Constitutionality of Substitute for Senate Bill No. 83,* 21 Colo. 69, 72, 39 P. 1088, 1088 (1895), subsection 24–10–106(1)(d) must be strictly construed to restrict its provisions to the clear intent of the legislature.[7] *Stephen,* 659 P.2d at 668 n. 3; *ac-*

§ 24–10–106(1)(d) specifically, the parties have demonstrated that the legislative history is at best inconclusive. *Compare* Colorado Legislative Council, Report to the Colorado General Assembly of 1969, *Governmental Liability in Colorado* [hereinafter "*Governmental Liability*"], at 136 (1968) ("The [Legislative Council Committee on Sovereign Immunity] agreed that it should be the policy of [the proposed immunity statute] not to narrow the present common law on liability nor to expand the present common law on immunity. It should be the intent of the statute not to undo the present law, unless otherwise specifically so stated in the act.") *with id.* at 137 ("A county is presently immune from liability.... The committee agreed that the liability of the municipality should be expanded to include the counties and the state on a logical basis.") *and Minutes of Meeting of Legislative Council Committee on Sovereign Immunity* [hereinafter "*Minutes*"], at 3 (Nov. 15, 1967) ("The committee agreed that, except for the duty to mark a dangerous condition such as construction equipment left overnight, the general rule for county roads should be the immunity rule.").

cord, e.g., *White v. Burns*, 213 Conn. 307, 310, 567 A.2d 1195, 1198 (1990); *City of Bowling Green v. T & E Elec. Contractors*, 602 S.W.2d 434, 436 (Ky.1980); *see Pigford v. People*, 197 Colo. 358, 360, 593 P.2d 354, 356 (1979); *see generally* 3 N. Singer, *Statutes and Statutory Construction* § 62.01 (Sands 4th ed.1986). In the absence of clear language in the Immunity Act waiving the sovereign immunity of counties for dangerous conditions on county roads, we must construe subsection 24–10–106(1)(d)'s omission of county roads—while creating four categories of other roads in the state—as expressing the legislature's intention to retain sovereign immunity for counties in an action for injuries arising from dangerous conditions on county roads.

### III

The Bloomers next argue that subsection 24–10–106(1)(d) violates the equal protection and due process guarantees of the state and federal constitutions by denying to persons injured on county roads the opportunity to obtain relief from counties while permitting persons injured on municipal, state, and federal roads the opportunity to obtain relief from those public entities. We hold that subsection 24–10–106(1)(d)'s exclusion of county roads from its general waiver of sovereign immunity for other roads in the state does not violate the equal protection and due process guarantees of the state and federal constitutions.

### A

■ Both the United States and Colorado constitutions guarantee that no person shall be denied equal protection of the laws. *E.g., Firelock, Inc. v. District Court*, 776 P.2d 1090, 1097 (Colo.1989). Equal protection guarantees that the government will treat similarly situated individuals in a similar manner. *E.g., id.; People v. Garberding*, 787 P.2d 154, 156 (Colo.1990). Statutes facing a constitutional challenge are presumed constitutional, and a party challenging the constitutionality of the statute must prove beyond a reasonable doubt that the statute is unconstitutional. *E.g., Firelock*, 776 P.2d at 1097; *Anderson v. State Dep't of Personnel*, 756 P.2d 969, 975 (Colo.1988). In considering the constitutionality of a statute, it is not the role of courts "to determine whether particular legislation is wise or desirable." *Passarelli v. Schoettler*, 742 P.2d 867, 870 (Colo.1987).

In this case, the Bloomers acknowledge that no fundamental right of theirs is affected, that no suspect class is created by subsection 24–10–106(1)(d), and that the proper standard of review is whether subsection 24–10–106(1)(d) "has a reasonable basis in fact and bears a reasonable relationship to a legitimate governmental interest," *Firelock*, 776 P.2d at 1098 (quoting *Lee v. Colorado Dep't of Health*, 718 P.2d 221, 227 (Colo.1986)). They argue only that subsection 24–10–106(1)(d) irrationally distinguishes between individuals injured on county roads and individuals injured on other roads in the state.

The Board argues, and the Bloomers do not dispute, that county roads can differ substantially from other roads such as interstate highways, state highways, and municipal streets. For example, county roads are less traveled, have less funds for maintenance, and include about 10,000 miles of unmaintained roads, some which are suitable only for special vehicles. The Bloomers respond only that "[c]ertain state and federal roads are no less sparsely traveled, and many state and federal roads are equally difficult to maintain."

■ The legislative history of the Immunity Act supports the Board's arguments. Legislative documents indicate that the legislature, in drafting the Immunity Act, was concerned about differing road conditions between counties and other political subdivisions of the state. *See, e.g., Governmental Liability*, at 137 ("[T]he [Legislative Council Committee on Sovereign Immunity] encountered much difficulty in determining the extent to which [expansion of liability to counties and the state] should take place, since it is recognized that there are certain types of roads or conditions of roads which probably ought not to cause the imposition of the rule of liability on the public entity."); *Minutes*, at 1–2 (June 13,

1968) (statement of Sen. Hahn) (in discussion of maintenance problems for some roads, suggesting that "perhaps immunity could be waived for injuries occuring [sic] on the Federal Secondary highways in counties of the First and Second Class, with immunity being retained for injuries occuring [sic] on the Federal Secondary highways in smaller counties"). The legislature's concern over differing construction and maintenance standards for roads in counties has a reasonable basis in fact, and demonstrates that subsection 24–10–106(1)(d) bears a reasonable relationship to the legitimate governmental interest of protecting counties from being financially overburdened by liability for dangerous conditions that exist on county roads and that the county is financially unable to remedy.

We conclude that subsection 24–10–106(1)(d)'s failure to include county roads in its waiver of sovereign immunity does not violate the equal protection clauses of the state and federal constitutions.[8]

### B

The Bloomers next argue that subsection 24–10–106(1)(d), when construed to exclude counties from the statute's waiver of sovereign immunity of other state political subdivisions, violates due process, as guaranteed by the federal and state constitutions. We disagree.[9]

A resident of a state has no constitutional right to sue the state or its political subdivisions. *See Fritz v. Regents of the Univ. of Colorado*, 196 Colo. 335, 339, 586 P.2d 23, 26 (1978). However, the state may permit a resident to bring an action against the state, and the state has full authority to specify what actions may be brought against the state and its subdivisions. *Id.* (citing *Evans v. Board of County Comm'rs*, 174 Colo. 97, 105, 482 P.2d 968, 972 (1971)). Accordingly, "[t]he right to maintain an action against a governmental (state) entity is derived from statutes, and reasonable conditions, such as notice requirement, imposed as a condition precedent to the right to maintain the action are mandatory." *Id.* The substantive guarantees of the due process clauses of the federal and state constitutions require that legislation bear a rational relationship to a legitimate end of government. *Colorado Soc'y of Community and Institutional Psychologists v. Lamm*, 741 P.2d 707, 710–11 (Colo.1987).

In this case, Bloomer's action against the Board is barred because subsection 24–10–106(1)(d) does not waive the Board's sovereign immunity. Moreover, subsection 24–10–106(1)(d)'s failure to waive the sovereign immunity of counties for dangerous conditions on county roads, which may differ significantly from other roads in the state in terms of quality and funds available to maintain the roads, bears a rational relationship to the legitimate governmental goal of protecting counties from undue financial burdens in constructing and maintaining roads, and in defending against lawsuits relative to county roads.

Judgment affirmed.

VOLLACK, J., did not participate.

---

**8.** The Bloomers also argue that § 24–10–106(1)(d), if construed to maintain the sovereign immunity of counties, is unconstitutional because it violates the "special legislation" clause of the Colorado Constitution. *See* Colo. Const. art. V, § 25. The special legislation clause prohibits legislation that applies to some classes but not to others without a reasonable basis, or legislation that exempts some members of a class without a reasonable basis. *City of Montrose v. Public Utils. Comm'n*, 732 P.2d 1181, 1190 (Colo.1987). In analyzing constitutional challenges that are based on the special legisla-

tion clause, we have upheld legislation if a reasonable basis exists for the legislation's distinction between classes it has created. *See, e.g., id.* As we have demonstrated, a reasonable basis exists for § 24–10–106(1)(d)'s distinction between, on one hand, counties and county roads, and, on the other hand, other state political subdivisions and non-county roads within the state. *See* Part II, *supra*, at 944–947.

**9.** We assume, without deciding, that the Bloomers' tort action against the Board is a property or liberty interest protected by the United States and Colorado constitutions.