Charles W. WARK, Shauna L. Wark, and Savanah J. Wark, by and through her next friends and parents, Charles W. Wark and Shauna L. Wark, Plaintiffs–Appellants,

v.

**BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF DOLORES,** Defendant–Appellee.

Nos. 00CA1340, 00CA2042.

Colorado Court of Appeals, Div. I.

Feb. 28, 2002.

As Modified on Denial of Rehearing April 25, 2002.

Crane and Tejada, P.C., Alex C. Tejada, Bethiah Beale Crane, Durango, Colorado, for Plaintiffs–Appellants.

Doehling & Driscoll, P.C., Gary L. Doehling, Jeffrey L. Driscoll, Grand Junction, Colorado, for Defendant–Appellee.

Opinion by Judge KAPELKE.

In this action arising from an automobile accident, plaintiffs, Charles W. Wark, Shauna L. Wark, and Savanah J. Wark by and through her next friends and parents Charles W. Wark and Shauna L. Wark, appeal the judgment dismissing their state law claims against the Board of County Commissioners of Dolores County (the county) for lack of subject matter jurisdiction and dismissing their claims under 42 U.S.C. § 1983 for failure to state a claim. We affirm and remand for an award of attorney fees.

Plaintiffs were seriously injured and Savanah Wark was killed in an automobile accident on a road running through national forest land in the county. The truck in which they were passengers had rounded a blind corner and encountered an oncoming pickup truck. The driver of plaintiffs' truck swerved to avoid a collision, and the truck fell down an embankment into a river.

In this action, plaintiffs asserted breach of contract claims based on an agreement between the county and the United States Department of Agriculture, Forest Service (forest road agreement); tort claims for loss of consortium, loss of services of a minor, and wrongful death; and also claims under 42 U.S.C. § 1983. The forest road agreement outlined the responsibilities of the county and the Forest Service in the development and maintenance of roads that were part of both the Forest Service and the county road systems. The trial court dismissed the contract and tort claims for lack of subject matter jurisdiction, finding that they were barred by the Colorado Governmental Immunity Act (CGIA), § 24–10–101, et seq., C.R.S.2001. The court later dismissed the § 1983 claims as well.

## I.

Plaintiffs contend that the trial court erred in applying the CGIA to bar their state law claims. We disagree.

### A.

First, plaintiffs contend that the trial court erred in finding that the road on which the accident occurred was a county road, thus

rendering the county immune from suit under the CGIA. We disagree.

■ Governmental immunity issues concern subject matter jurisdiction and are determined in accordance with C.R.C.P. 12(b)(1). *See Fogg v. Macaluso,* 892 P.2d 271 (Colo.1995). Any factual dispute upon which the existence of jurisdiction may turn is for the trial court to resolve, and an appellate court will not disturb the factual findings of the trial court unless they are clearly erroneous. However, if the underlying facts are undisputed, the issue is one of law, and an appellate court is not bound by the trial court's determinations. *City of Colorado Springs v. Conners,* 993 P.2d 1167 (Colo. 2000); *Trinity Broadcasting of Denver, Inc. v. City of Westminster,* 848 P.2d 916 (Colo. 1993).

The CGIA provides that "[a] public entity shall be immune from liability in all claims for injury which lie in tort or could lie in tort regardless of whether that may be the type of action or the form of relief chosen by the claimant except as provided otherwise in this section." Section 24–10–106(1), C.R.S.2001.

However, governmental immunity is waived by a public entity for actions arising from injuries resulting from "[a] dangerous condition of a public highway, road, or street which physically interferes with the movement of traffic." Section 24–10–106(1)(d)(I), C.R.S.2001.

■ The "dangerous condition" waiver applies to: (1) any road within the corporate limits of any municipality; (2) any highway that is a part of the federal interstate highway system or the federal primary highway system; (3) any highway that is a part of the federal secondary highway system; and (4) any highway that is a part of the state highway system. Section 24–10–106(1)(d)(I), C.R.S.2001. This section has been construed to effect a waiver of immunity for these categories of roads only. Thus, counties do not waive their immunity for actions arising from injuries resulting from dangerous conditions on county roads. *Bloomer v. Bd. of County Comm'rs,* 799 P.2d 942 (Colo.1990), *overruled in part on other grounds by Bertrand v. Bd. of County Comm'rs,* 872 P.2d 223 (Colo.1994); *Click v. Bd. of County Comm'rs,* 923 P.2d 347 (Colo.App.1996).

Here, the trial court held a limited evidentiary hearing to determine the jurisdictional issue of immunity. Based on the evidence, it found that the county had established its county road system in accordance with state statute and that the road on which the accident occurred was included in that system. The court also concluded that plaintiffs' breach of contract and tort claims did or could lie in tort and thus fell within the scope of the CGIA. Accordingly, the court held that these claims were barred by governmental immunity.

At the outset, we reject the county's argument that the deposition exhibits relied on by plaintiffs were not properly before the trial court and therefore should not be considered on appeal. The record confirms that these exhibits were submitted at the evidentiary hearing. Thus, they are properly part of the record on appeal.

Plaintiffs argue that the court's finding that the road was a county road was erroneous because there was no direct evidence that the road was actually on the official county road system map filed with the state. Further, they point to evidence that both county and Forest Service personnel believed the county did not have any ownership interest or authority over the portion of road where the accident occurred.

■ Although there was conflicting evidence, the trial court's finding that the road was a county road was supported by the evidence and was not clearly erroneous. The court relied on evidence that the county had established its secondary road system in 1953 by designating a map, giving public notice, and adopting by resolution the official county road map, *see* § 43–2–110, C.R.S.2001, as well as on testimony at the hearing indicating that the road was included on the official map.

Because the trial court's finding is not clearly erroneous, we may not disturb it.

### B.

In the alternative, plaintiffs argue that the CGIA should be read to include counties among the entities whose immunity is waived for actions for injuries resulting from dangerous conditions on roadways under these circumstances. We disagree.

Plaintiffs argue that *Bloomer v. Board of County Commissioners, supra,* was wrongly decided because the supreme court improperly interpreted the CGIA in concluding that counties were not included within the statutory waiver of immunity for dangerous conditions of roadways. Further, citing *Bertrand v. Board of County Commissioners, supra,* and *Walton v. State,* 968 P.2d 636 (Colo. 1998), plaintiffs stress that the CGIA immunity provisions must be strictly construed and the waiver of immunity provisions deferentially interpreted in favor of victims of negligence by governmental agents. We agree that the principles of interpretation set forth in *Bertrand* and *Walton* apply. We nonetheless reject plaintiffs' contention that the statutory waiver of liability for dangerous conditions of roadways applies to claims against counties, even where the roadway shares another designation for which immunity might be waived.

■ Plaintiffs' contention that *Bloomer* was wrongly decided was addressed and rejected by a division of this court in *Click v. Board of County Commissioners, supra.* In holding that the waiver of immunity did not apply, the division stated:

> In *Bertrand,* the [supreme] court overruled *Bloomer* to the extent that it held that statutory waivers of immunity must be strictly construed. However, we find nothing in *Bertrand* indicating that the court disapproved of its holding in *Bloomer* that § 24–10–106(1)(d)(I) did not waive immunity for dangerous conditions present on county roads.

*Click v. Bd. of County Comm'rs, supra,* 923 P.2d at 350.

We agree with the analysis and holding of the division in *Click.*

Further, even if we assume, as plaintiffs contend, that the road here was not only a county road but also part of a federal secondary highway system, we nevertheless conclude that the county's immunity remains unaffected.

As interpreted by Colorado courts, immunity under § 24–10–106 attaches to the county itself. *See Bloomer v. Bd. of County Comm'rs, supra,* 799 P.2d at 945 (the CGIA "makes no provision for waiving the sovereign immunity of *counties* for dangerous conditions present on county roads") (emphasis added). This interpretation is supported by the statute's legislative history, which shows that the General Assembly intended to protect counties "from being financially overburdened by liability for dangerous conditions that exist on county roads and that the county is financially unable to remedy." *Bloomer v. Bd. of County Comm'rs, supra,* 799 P.2d at 948.

This essential goal of protecting counties from undue financial burdens would be undermined if we were to read the CGIA to waive a county's immunity in actions arising from dangerous conditions on county roads that carry an additional designation, such as federal secondary highway. We see no basis or authority for such an interpretation.

Accordingly, we conclude that the trial court properly dismissed plaintiffs' claims as barred by governmental immunity.

### C.

Plaintiffs also argue that the trial court erred in determining that they failed to establish the existence of a dangerous condition. In light of our conclusion that immunity was not waived, we need not address this argument.

### II.

Plaintiffs next contend that the trial court erred in dismissing their § 1983 claims. We reject this contention.

The county filed a motion under C.R.C.P. 12(b) to dismiss plaintiffs' § 1983 claims. Although the county argued that plaintiffs' claims were barred under the qualified immunity doctrine, the trial court's ruling is primarily based on the insufficiency of the allegations in the complaint. *See County of Sacramento v. Lewis,* 523 U.S. 833, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998)(noting that when the defense of qualified immunity is raised, the court should first determine whether the plaintiff has alleged a deprivation of a constitutional right at all).

To prevail on a claim under § 1983, plaintiffs must show that the county, under color of state law, deprived them of a right secured by the constitution or the laws of the United States. In addition, to state a claim against a government entity, plaintiffs must allege that the acts complained of were the result of an established custom or policy. *Reifschneider v. City & County of Denver*, 917 P.2d 315 (Colo.App.1995).

Here, plaintiffs alleged that the county, acting under color of state law, deliberately, intentionally, or recklessly deprived them of life, liberty, and property without due process of law. The substance of their claim is that, by failing to remedy the dangerous condition of the road, the county created a situation that led to the harm. The threshold question is whether failure to maintain or improve a road, even recklessly or intentionally, constitutes a violation cognizable under § 1983. We conclude it does not.

The Due Process Clause was intended to prevent the arbitrary exercise or abuse of governmental power and to protect against deliberate decisions of governmental officials to deprive a person of life, liberty, or property. *DeShaney v. Winnebago County Dep't of Social Servs.*, 489 U.S. 189, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989); *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986).

The constitutional guarantee of due process does not, however, convert all common law duties owed by government actors into constitutional torts. As the Supreme Court noted in *DeShaney, supra*:

The Clause is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security. It forbids the State itself to deprive individuals of life, liberty, or property without "due process of law," but its language cannot fairly be extended to impose an affirmative obligation on the State to ensure that those interests do not come to harm through other means.

489 U.S. at 195, 109 S.Ct. at 1003, 103 L.Ed.2d at 258–59.

To prevail on a substantive due process claim, plaintiffs must demonstrate that the state acted in a manner that "shocks the conscience." *County of Sacramento v. Lewis, supra*, 523 U.S. at 846, 118 S.Ct. at 1717, 140 L.Ed.2d at 1057. This standard requires more than a showing of intentional or reckless conduct. *Uhlrig v. Harder*, 64 F.3d 567 (10th Cir.1995).

Plaintiffs have not alleged conduct so arbitrary as to shock the conscience. They assert in the complaint that the road was made dangerous by:

(a) its width; (b) erosion of its edges; (c) the manner and infrequency of grading; (d) the materials used for its construction, improvement and/or maintenance; (e) the infrequency of maintenance work on the road; (f) the failure to set and post appropriate vehicle and speed restrictions; and (g) the failure to post appropriate warnings of the narrow road.

These allegations, viewed in the light most favorable to plaintiffs, fail to demonstrate conduct so outrageous that it shocks the conscience, thus warranting a constitutional remedy. The substance of the complaint essentially lies in tort, and we conclude that it falls outside the scope of § 1983.

Further, we find no authority to support plaintiffs' assertion that the county had a constitutional duty to make road improvements. *See Collins v. City of Harker Heights*, 503 U.S. 115, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992)(city had no constitutional duty to provide safe working environment); *Hull v. City of Duncanville*, 678 F.2d 582 (5th Cir.1982)(no federal right implicated in city's failure to enforce speed limits and maintain train crossing and traffic signals); *Reifschneider v. City & County of Denver, supra* (no right guaranteed under federal constitution or other law to proper removal of snow and ice).

We also reject plaintiffs' assertion that they have a due process claim under the "danger creation" exception.

Generally, the state has no duty to protect from harm inflicted by third persons, such as the driver of the other truck here. However, the state can be found to have an affirmative duty to protect citizens from constitutional injury inflicted by a private person if the plaintiff shows that the state created

the danger that ultimately caused the harm or increased the individual's vulnerability to that harm. *Henderson v. Gunther*, 931 P.2d 1150 (Colo.1997).

The "danger creation" exception requires a showing that the state has done more than merely create a dangerous environment in which the harm occurs. *Henderson v. Gunther, supra.* Further, as the Tenth Circuit Court of Appeals stated in *Armijo v. Wagon Mound Public Schools*, 159 F.3d 1253, 1263 (10th Cir.1998): "The key to the state-created danger cases ... lies in the state actors' culpable knowledge and conduct in affirmatively placing an individual in a position of danger, effectively stripping a person of her ability to defend herself, or cutting off potential sources of private aid."

Even where the state has created an environment where harm might occur, the plaintiff must demonstrate that the danger is specific to an individual or a discrete class of persons, as opposed to the public at large. *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902 (3d Cir.1997)(state is liable under danger creation exception only where it acts in a way that leaves a discrete plaintiff vulnerable to a foreseeable injury); *Uhlrig v. Harder, supra; Jones v. City of Carlisle*, 3 F.3d 945 (6th Cir.1993)(plaintiffs failed to show they were any more vulnerable than other citizens to danger allegedly created by the government).

Here, plaintiffs did not allege that the county specifically placed them, as opposed to the general driving public, in a situation where they were particularly vulnerable to hazards from third parties.

Thus, we agree with the trial court that the allegations in the complaint were insufficient to establish that plaintiffs were deprived of a right, privilege, or immunity secured by the federal constitution or federal law.

Accordingly, we perceive no error in the trial court's dismissal of plaintiffs' § 1983 claims.

### III.

Following the dismissal of plaintiffs' claims, the trial court awarded the county attorney fees pursuant to § 13–17–201, C.R.S.2001, and 42 U.S.C. § 1988. The county also requests attorney fees incurred in defending this appeal of the dismissal of plaintiffs' claims.

As relevant here, § 13–17–201 provides:

In all actions brought as a result of a death or an injury to person or property occasioned by the tort of any other person, where any such action is dismissed on motion of the defendant prior to trial under rule 12(b) of the Colorado rules of civil procedure, such defendant shall have judgment for his reasonable attorney fees in defending the action.

Under this section, an award of attorney fees is mandatory when a trial court dismisses an action under C.R.C.P. 12(b). *Barnett v. Denver Publ'g Co.*, 36 P.3d 145 (Colo.App.2001). A party who successfully defends such a dismissal order is also entitled to recover reasonable attorney fees incurred on appeal. *Henderson v. Bear*, 968 P.2d 144 (Colo.App.1998).

Therefore, in light of our affirmance of the dismissal of plaintiffs' state law claims, the county is entitled to an award of its reasonable attorney fees incurred on appeal as they relate to those claims.

However, the county's request for attorney fees relating to plaintiffs' appeal of the dismissal of the § 1983 claims is governed by the federal standards under 42 U.S.C. § 1988. Under those standards, a prevailing defendant may recover fees only upon a finding that the plaintiff's claim or appeal was frivolous, unreasonable, or without foundation. *State v. Golden's Concrete Co.*, 962 P.2d 919 (Colo.1998); *Rose v. City & County of Denver*, 990 P.2d 1120 (Colo.App. 1999). Because we conclude that plaintiffs' appeal of the dismissal of its § 1983 claim was not frivolous, unreasonable, or without foundation, we deny the county's request as it relates to that claim.

The judgment is affirmed, and the case is remanded for an award of reasonable attorney fees incurred by the county in connection with the dismissal of plaintiffs' state law claims.

Judge METZGER and Judge ROTHENBERG concur.