**Yingman LIN, Shen Lin, and Bajin Zhang, Plaintiffs–Appellees,**

v.

**CITY OF GOLDEN, Defendant–Appellant.**

**No. 02CA2535.**

Colorado Court of Appeals, Div. I.

March 25, 2004.

Certiorari Denied Sept. 7, 2004.*

---

* Justice COATS would grant as to the following issue:

Whether the court of appeals erred by concluding that maintenance of lighting on a road constitutes a dangerous condition which physically interferes with the movement of traffic thereby creating a waiver of sovereign immunity as contemplated by section 24-10-106(1)(d)(I), 7B C.R.S. (2003).

Dale S. Carpenter, III, P.C., Dale S. Carpenter, III, Lakewood, Colorado, for Plaintiffs–Appellees.

Burg Simpson Eldredge Hersh & Jardine, P.C., Diane Vaksdal Smith, Englewood, Colorado, for Plaintiff–Appellee Bajin Zhang.

Senter Goldfarb & Rice, L.L.C., Eric M. Ziporin, Sophia H. Tsai, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge MARQUEZ.

Defendant, the City of Golden, appeals the order denying its motion to dismiss, on governmental immunity grounds, the complaint brought by plaintiffs, Yingman Lin, Shen Lin, and Bajin Zhang. We affirm.

This case arises out of a pedestrian-automobile accident in which Xiaolin Zhang, the wife, mother, and sister of plaintiffs, respectively, was struck and killed. The accident occurred after dark, at an intersection within

the City. An overhead light located at the intersection was not illuminated at the time of the accident. Plaintiffs alleged that the accident was caused, in whole or in part, by this lack of lighting and that the City was responsible for providing and maintaining the light.

The City moved to dismiss plaintiffs' complaint pursuant to C.R.C.P. 12(b)(1) for lack of subject matter jurisdiction under the Colorado Governmental Immunity Act (GIA), § 24–10–101, et seq., C.R.S.2003. The City argued that § 24–10–106(1)(d)(I), C.R.S.2003, which waives a public entity's immunity from suit for a dangerous condition of a public road that physically interferes with the movement of traffic, did not apply because the lack of proper lighting did not constitute a dangerous condition that physically interferes with the movement of traffic on the roadway.

In response, plaintiffs also argued that the City waived its immunity by failing to maintain a marked crosswalk at the intersection, which previously had crosswalk markings. Plaintiffs argued that the evidence established that the City had failed to maintain the public roadway in its original condition. In support of this position, plaintiffs noted that, based on aerial photographs, a marked crosswalk had existed at that intersection in 1993, 1995, 1998, and 2000. However, on September 20, 2001, the date of the accident, the crosswalk was not marked.

In reply, the City argued that the lack of a painted crosswalk did not create a dangerous condition of a public road which physically interferes with the movement of traffic. Consequently, the City contended that its immunity had not been waived based on a failure to maintain the painted lines of the crosswalk.

The trial court denied the City's motion to dismiss, finding that the "maintenance of lighting may physically interfere with the movement of traffic." The court did not rule on whether the failure to keep the crosswalk lines painted resulted in a waiver of the City's immunity under § 24–10–106(1)(d)(I). Rather, the court noted plaintiffs' evidence that the crosswalk had been previously marked, but such markings were missing on the date of the accident. The City then brought this interlocutory appeal pursuant to § 24–10–108, C.R.S.2003.

## I.

The City contends that the trial court erred in finding that its immunity had been waived because the failure to maintain the street light at the intersection may constitute a dangerous condition of a public road for purposes of § 24–10–106(1)(d)(I). Under the circumstances presented here, we disagree.

Whether immunity has been waived under the GIA is an issue of subject matter jurisdiction that is resolved by the trial court under C.R.C.P. 12(b)(1). *See Fogg v. Macaluso,* 892 P.2d 271 (Colo.1995). The burden of proving jurisdiction is on the plaintiff, and the trial court's findings of fact supporting a determination under the GIA will not be reversed unless clearly erroneous. *Trinity Broad. of Denver, Inc. v. City of Westminster,* 848 P.2d 916 (Colo.1993).

Because the GIA derogates the common law, its grant of immunity must be strictly construed, and its waiver provisions are interpreted broadly. *Corsentino v. Cordova,* 4 P.3d 1082 (Colo.2000). Nevertheless, our primary task in construing a statute is to determine and give effect to the intent of the legislature. *Medina v. State,* 35 P.3d 443 (Colo.2001). Accordingly, we look to the statutory language, giving words and phrases their plain and ordinary meaning, and interpreting the statute in a way that best effectuates the purpose of the legislative scheme. *Swieckowski v. City of Fort Collins,* 934 P.2d 1380 (Colo.1997).

Section 24–10–106(1)(d)(I) provides that a public entity's immunity is waived for:

A dangerous condition of a public highway, road, or street which physically interferes with the movement of traffic on the paved portion, if paved, or on the portion customarily used for travel by motor vehicles, if unpaved, of any public highway, road, street, or sidewalk within the corporate limits of any municipality. . . .

To establish that a "dangerous condition" existed, plaintiffs were required to prove (1)

that the failure to maintain proper lighting on the street constituted a physical condition of the road; (2) that it represented an unreasonable risk to the health or safety of the public; (3) that the City knew or should have known of the dangerous condition of the road prior to the accident; and (4) that the dangerous condition was proximately caused by the negligent act or omission of the City in constructing or maintaining the road. *See Medina v. State, supra; Walton v. State,* 968 P.2d 636 (Colo.1998); *see also* § 24–10–103(1), C.R.S.2003 (setting forth definition of "dangerous condition").

■ The term "maintain" has been construed as meaning to keep a road "in the same general state of being, repair, or efficiency *as initially constructed." Swieckowski v. City of Fort Collins, supra,* 934 P.2d at 1385 (emphasis in original). Consequently, an injury results from a failure to maintain when it is caused by a condition of the road that develops subsequent to the road's initial design. *Medina v. State, supra.*

In *State v. Moldovan,* 842 P.2d 220 (Colo. 1992), the plaintiff was injured when his motorcycle struck a cow that had wandered onto the highway because the state had allowed a right-of-way fence adjacent to the road to fall into disrepair. The state argued it was responsible only for injuries caused by failure to maintain safe conditions of a highway surface. The supreme court rejected this argument and held that an improperly maintained safety device that was an integral part of a state highway system may constitute a dangerous condition on the highway that physically interferes with the movement of traffic on the paved portion of the highway and, thus, may be the basis of a tort claim against the public entity responsible for maintaining the device. The court determined that the plaintiff's injuries had been sustained as a result of the state's failure to maintain the fence and that therefore, the state was not immune from liability for the plaintiff's injuries.

■ As was stated in *Moldovan,* a dangerous condition of a public roadway under § 24–10–106(1)(d)(I) is not limited to those conditions that have their physical source in the highway surface itself. *See also Medina*

*v. State, supra* (no reason to distinguish cut slope above road from right-of-way fence at issue in *Moldovan* ); *Stephen v. City & County of Denver,* 659 P.2d 666, 668 (Colo. 1983)("to construe 'dangerous condition' to be limited to the physical condition of the road surface gives too cramped a reading to the statute and ignores the purpose for which this exception to sovereign immunity was created"); *Hallam v. City of Colorado Springs,* 914 P.2d 479, 483 (Colo.App. 1995)("[a] dangerous condition is not limited to those conditions that have their physical source in the highway surface itself"); *cf. Cordova v. Pueblo W. Metro. Dist.,* 986 P.2d 976 (Colo.App.1998), *aff'd on other grounds,* 4 P.3d 1082 (Colo.2000).

We also conclude that the decision by a division of this court in *Cordova, supra,* does not mandate a different result. In *Cordova,* the division held that overgrown trees and bushes in a median did not constitute a physical interference with the movement of traffic on the paved portion of the street because the street itself was clear and free of any objects or other obstructions. The division noted that while the vegetation was alleged to have impaired the ability of drivers to view traffic on the other side of the median strip, that condition did not constitute a "physical" interference with the movement of traffic.

In contrast to the street light at issue here, there was no indication in *Cordova* that the trees and bushes located in the median constituted a safety device that was an integral part of the roadway. Rather, it appears that the trees and bushes were merely landscaping features.

■ Here, it was undisputed that the street light was not illuminated, thus degrading the safety of the intersection. Additionally, the City does not dispute that the street light may constitute a safety device that was an integral part of the roadway or that it was part of the original design of the roadway. The City only argued that the mere failure to illuminate the street did not cause a physical interference with the movement of traffic on the street.

As in *Moldovan,* in which the failure to maintain the fence allowed the cow to get on

the highway and cause the accident, here the failure to maintain the street light allegedly contributed to the accident by making it difficult to see the accident victim in the roadway. Therefore, based on the evidence indicating that the street light may have constituted a safety device that was an integral part of the roadway, we conclude that the trial court did not err in determining that the City's immunity had been waived under § 24–10–106(1)(d)(I).

Nevertheless, the City further argues that, even if the malfunctioning light constitutes a "dangerous condition of a public highway" under § 24–10–106(1)(d)(I), the absence of lighting has no tangible properties, and therefore it does not "physically interfere[ ] with the movement of traffic" on the highway, as that section also requires. We are not persuaded.

Although the statutes regarding traffic signals have subsequently been amended, the language from *Stephen v. City & County of Denver, supra,* is still pertinent. There, the supreme court held that Denver's failure to maintain a stop sign in the correct orientation, thereby creating the appearance to approaching traffic that the street was a "through" street, fell within the exception to immunity created by § 24–10–106(1)(d)(I). Although a stop sign adjacent to the roadway, like the street light at issue here, is not physically on the roadway, the sign's positioning affects the movement of traffic, and "[t]he necessity of stop signs to regulate traffic flow in the interest of public safety needs no elaboration." *Stephen, supra,* 659 P.2d at 668; *see also Thorpe v. City & County of Denver,* 30 Colo.App. 284, 286, 494 P.2d 129, 130 (1971)("failure of the City to maintain a traffic light properly can create a condition far more dangerous than, for example, a hole in the pavement"). Similarly, inadequate lighting can lead to greater danger.

The supreme court in *Moldovan* stated that its "discussion in *Stephen* of the functionally integrated character of a highway system, involving as it does not only the road surface but also other safety devices that may be physically separated from the road surface, remains as true today as it was in 1983." *Moldovan, supra,* 842 P.2d at 224.

Hence, we conclude that the malfunctioning street light "physically interferes with the movement of traffic."

In view of this determination, we need not address plaintiffs' argument that the trial court's order may be upheld on the basis that the City's failure to maintain the crosswalk constituted a dangerous condition of a public road. Accordingly, we also need not address whether under § 24–10–106(1)(d)(I), which provides that the phrase "physically interferes with the movement of traffic" does not include "traffic signs, signals, or markings, or the lack thereof," precludes a waiver of the City's immunity for its failure to maintain the crosswalk markings.

## II.

■ The City additionally contends that the trial court erred in failing to hold an evidentiary hearing to resolve disputed issues of fact regarding whether its immunity was waived under the GIA. Under the circumstances presented here, we again disagree.

When the alleged jurisdictional facts are in dispute, the trial court should conduct an evidentiary hearing before ruling on the jurisdictional issue. When there is no evidentiary dispute, governmental immunity or waiver of immunity is a question of law, and the trial court may rule on the jurisdictional issue without a hearing. *Padilla v. Sch. Dist. No. 1,* 25 P.3d 1176 (Colo.2001)(trial court did not abuse its discretion in ruling on public entity's motion to dismiss without holding an evidentiary hearing when trial court accepted all the plaintiff's assertions of fact as true).

As the City stated in its brief to this court, the issue whether lighting, or the lack thereof, physically interferes with the movement of traffic is a legal question involving statutory interpretation of the GIA's waiver provision. The City noted that it did not believe that whether it had notice of the condition and whether the street light had been properly maintained were relevant to the resolution of that question. Consequently, the City

**308**

did not request an evidentiary hearing in its filings with the trial court. Rather, the City specifically asserted that a factual inquiry was not necessary because immunity was apparent on the face of plaintiffs' complaint.

Therefore, we conclude that the trial court did not err in failing to hold an evidentiary hearing.

The order is affirmed.

Judge TAUBMAN and Judge WEBB concur.