Evelyn Marie HALVERSON,
Plaintiff–Appellant,

v.

PIKES PEAK FAMILY COUNSELING AND MENTAL HEALTH CENTER, INC., d/b/a The Crisis Center; Pamela L. King, Counselor thereof; Debra Amesbury, Clinical Director thereof; Harold Taylor, Supervisor thereof; and John Doe and other persons unknown, as agents of the Pikes Peak Family Counseling and Mental Health Center, Inc., Defendants–Appellees.

No. 91CA1610.

Colorado Court of Appeals,
Div. I.

Nov. 5, 1992.

Rehearing Denied Dec. 10, 1992.

Certiorari Denied April 26, 1993.

Law Offices of John B. Ciccolella, P.C., John B. Ciccolella, Colorado Springs, Elvin L. Gentry, P.C., Elvin L. Gentry, Colorado Springs, for plaintiff-appellant.

Meinhold and Maldonado, Margaret M. Maldonado, Colorado Springs, for defendants-appellees.

Opinion by Chief Judge STERNBERG.

In this negligence action against the Pikes Peak Family Counseling and Mental Health Center, Inc., (the Clinic) and several of its employees, plaintiff, Evelyn Marie Halverson, appeals from the summary judgment entered in favor of defendants upon remand from this court. We again reverse and remand with directions to reinstate plaintiff's complaint.

The complaint alleged that in March of 1987, while plaintiff was an inpatient at the Clinic, she was sexually assaulted by anoth-

er inpatient who had a history of violent behavior. Plaintiff asserted that defendants were negligent in failing to protect her and in failing to supervise and control the attacker after they had notice of his dangerous proclivities and his prior aggressive behavior toward plaintiff.

Initially, in reliance on § 13–21–117, C.R.S. (1987 Repl.Vol. 6A), the trial court dismissed plaintiff's complaint for failure to state a claim upon which relief could be granted. On appeal, while the panel did not agree upon the applicability of the statute, this court reversed, all panel members agreeing that the allegations of the complaint were sufficient to state a claim. *See Halverson v. Pikes Peak Family Counseling & Mental Health Center, Inc.,* 795 P.2d 1352 (Colo.App.1990) (*Halverson I*). Accordingly, the case was remanded to the trial court with directions to reinstate the complaint.

Upon remand, defendants moved for summary judgment asserting that plaintiff had failed to provide facts to support her claim that defendants knew of the attacker's alleged threats or aggressive behavior toward plaintiff. They further argued that there was no genuine issue of material fact concerning defendant's lack of knowledge of the attacker's threats or aggressive behavior toward plaintiff and that, therefore, defendants were immune from liability as a matter of law pursuant to § 13–21–117.

Following the submission of additional briefs by both parties, the trial court concluded that, under § 13–21–117, defendants had no duty to warn or protect plaintiff unless *plaintiff herself* had told them that her attacker had made a serious threat. Accordingly, the trial court granted defendants' motion based upon its determination that plaintiff had not communicated to defendants a serious threat of imminent physical violence from her attacker.

## I.

■ Plaintiff contends that the trial court erred in entering summary judgment for defendants based upon there being no indication in the record that plaintiff had told defendants of the attacker's threat of imminent physical violence. We agree that this construction of § 13–21–117 was erroneous.

As pertinent here, § 13–21–117 provides as follows:

No ... mental health professional and no mental health hospital, community mental health center or clinic, institution, or their staff shall be liable for damages in any civil action for failure to warn or protect any person *against a mental health patient's violent behavior,* nor shall any such person be held civilly liable for failure to predict such violent behavior, *except where the patient has communicated to* the mental health care provider a serious threat or imminent physical violence against a specific person or persons. (emphasis supplied)

Based upon the plain meaning of the language adopted by the General Assembly, we conclude that the exception was not intended solely to require the attacked *victim* to communicate the violent threat. Instead, the exception is broad enough to apply when the *violent patient's* threats have been communicated to the health care provider. *Halverson I, supra* (Criswell, J., specially concurring); *see also* Dice, *The Duty to Warn and the Liability of Mental Health Care Providers,* 16 *Colo.Law.* 70 (January 1987).

Accordingly, we conclude that the trial court committed reversible error by construing § 13–21–117 to place this burden of communication upon the victim.

## II.

■ Plaintiff also contends that the trial court erred in holding that the statute abrogated a mental hospital's duty to provide a safe environment for its patients. However, we are unable to address that contention because the previous opinion in this case (*Halverson I*) constitutes the law of the case. *See Governor's Ranch Professional Center, Ltd. v. Mercy, Inc.,* 793 P.2d 648 (Colo.App.1990).

The judgment is reversed, and the cause is remanded to the trial court with directions to reinstate the complaint and for

further proceedings consistent with the views expressed in this opinion.

NEY, J., concurs.

DAVIDSON, J., specially concurs.

Judge DAVIDSON specially concurs.

I concur in the result reached by the majority; however, I write separately to express my view that the trial court made a more fundamental error than that addressed by the majority. In my view, the trial court erred in holding that 13–21–117 limits a mental hospital's duty to provide a safe environment for its patients. I do not believe that, in enacting that statute, the General Assembly intended such result.

The question whether a defendant owes a legal duty to the plaintiff is a question of law. *Perreira v. State*, 768 P.2d 1198 (Colo.1989). Thus, I do not consider us bound by the trial court's conclusion with respect to whether the statutory scheme for treating the mentally ill creates a duty to protect an inpatient from physical injuries caused by another inpatient. *See Felger v. Larimer County Board of County Commissioners*, 776 P.2d 1169 (Colo.App. 1989).

I note that a person generally does not owe a duty of care to protect another person from the actions of a third party. *Felger v. Larimer County Board of County Commissioners, supra*. However, such a duty may be imposed when a special relationship exists between either the defendant and a third party wrongdoer or between the defendant and the potential victim of the wrongdoer's action. *Perreira v. State, supra;* Restatement (Second) of Torts § 315 (1965).

Further, a duty to take affirmative protective action may arise in situations in which a person is legally required to take, or who voluntarily takes, the custody of another under circumstances which deprive the other of normal opportunities for protection. *Perreira v. State, supra;* Restatement (Second) of Torts § 314(A) (1965). And, in some instances, a statute may create the requisite special relationship that imposes the duty. *Felger v. Lar-imer County Board of County Commissioners, supra*.

In determining whether a duty of care exists under Colorado's statutory scheme, the primary task of a court is to determine and give effect to the intent of the General Assembly. *City of Aspen v. Meserole*, 803 P.2d 950 (Colo.1990). In regard to such a determination, a guiding rule is that legislative grants of immunity, being in derogation of the common law, must be strictly construed. *City of Aspen v. Meserole, supra*. Moreover, when two statutes deal with the same subject matter, a court must read them together in order to carry out their beneficent purposes. *People in Interest of M.K.A.*, 182 Colo. 172, 511 P.2d 477 (1973).

Further, in determining the intent of the General Assembly, it must be presumed that a just and reasonable result was intended. *Ingram v. Cooper*, 698 P.2d 1314 (Colo.1985). Finally, if the intended scope of a statute is not clear, the consequences of a particular construction must be considered. *Jones v. Cox*, 828 P.2d 218 (Colo. 1992).

Applying these principles here, I note that the declared purposes of Colorado's statutory scheme for the care and treatment of the mentally ill include the following: to secure for each person the care and treatment suited to the needs of that patient; to insure that such care and treatment are skillfully and humanely administered with full respect for the person's dignity and personal integrity; and to provide the fullest possible measure of privacy and dignity to persons undergoing care and treatment for mental illness. Section 27–10–101(1)(a) and (c), C.R.S. (1989 Repl.Vol. 11B); *Perreira v. State, supra*.

Further, our supreme court has recently held that these purposes extend comprehensively to all mentally ill persons, including those who voluntarily receive mental health services. *Goebel v. Colorado Department of Institutions*, 830 P.2d 1036 (Colo.1992).

Conversely, having considered the legislative history of § 13–21–117 in light of the

principle that grants of immunity are to be strictly construed, I cannot conclude that § 13–21–117 was intended to apply to claims arising from injuries suffered by a hospitalized *inpatient* which are inflicted by the violent acts of another *inpatient. See Halverson I* (Criswell, J. specially concurring); *see also Perreira v. State, supra,* (fn. 8) (Section 13–21–117 is instructive as to the duty of a psychiatrist in treating a voluntary *outpatient*); Dice, *supra* (the new statute is just a codification of the rule that a psychiatrist owes no duty to persons who are seriously injured by an *outpatient* if the outpatient had made no threats during the course of his treatment).

Finally, upon reviewing § 13–21–117 in relationship to the other statutes concerning the care and treatment of the mentally ill, it is my view that it would yield an unjust and unreasonable result to interpret § 13–21–117 as nullifying the duty of mental health care providers to treat their hospitalized patients humanely and with respect for the patients' dignity, privacy, and personal integrity. *See* § 27–10–101(1)(a) and (c), C.R.S. (1989 Repl.Vol. 11B).

Interpreting the statute as broadly as urged by the defendants would lead to consequences the General Assembly did not intend—*i.e.,* barring suits by one inpatient for injuries inflicted by another inpatient. *See Jones v. Cox supra.* Thus, I would hold that § 13–21–117 was inapplicable to plaintiff's claims and would reverse on that broad ground.

To the extent that this view is contrary to the holding in *Halverson I,* I would respectfully decline to follow that decision.